UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

STATE OF NEW YORK and BASIL SEGGOS, as
Commissioner of the New York State Department
of Environmental Conservation and Trustee of New
York State's Natural Resources,

                        Plaintiffs,

      v.

P.A. INDUSTRIES, INC. A/K/A PLASTIC
ASSOCIATES INC., METAL ETCHING CO.,
INC. A/K/A A.I.S. INDUSTRIES, INC., ARTHUR
SCHUTZMAN A/K/A/ ARTHUR
SCHULTZMAN, ALAN STERN, GLORIA
STERN, MIRIAM SOMMERFIELD, FREEPORT
CREEK ASSOCIATES, FREEPORT CREEK
ASSOCIATES, LLC, MAIN STREET MARINE
INC., DANTE GROVER, BWM HIGH & DRY,
INC., APACHE REALTY CORP., and AL
GROVER'S HIGH AND DRY MARINA, INC.,

                        Defendants.

**MEMORANDUM AND ORDER**
17-CV-01146 (HG)

**HECTOR GONZALEZ**, United States District Judge:

       Before the Court is the State of New York and Basil Seggos as Commissioner of the New York State Department of Environmental Conservation ("DEC") and Trustee of New York State's Natural Resources (together, "Plaintiffs" or the "State") motion to dismiss ("Motion") Main Street Marine Inc. ("Main Street Marine"), Dante Grover ("Grover"), BWM High & Dry, Inc. ("BWM"), Apache Realty Corp. ("Apache"), and Al Grover's High and Dry Marina, Inc.'s ("High and Dry") (together, the "Marina Defendants") counterclaim ("Counterclaim") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

       For the reasons set forth below, Plaintiffs' Motion is denied.

## **PROCEDURAL BACKGROUND**

Plaintiffs brought this action against P.A. Industries, Metal Etchings, Arthur Schutzman, Alan Stern, Gloria Stern, Miriam Sommerfield, Freeport Creek Partnership, and Freeport Creek LLC. in February 28, 2017, seeking to recover its costs for cleaning up a hazardous waste site in Freeport, New York pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., as well as state law. ECF No. 1. In December 2017, Plaintiffs amended their complaint to include Grover and Main Street Marine and sought to hold them jointly and severally liable for more than $2,812,956.20 in past and future environmental cleanup costs. ECF No. 53. In April 2020, Plaintiffs amended their complaint again to include BWM, Apache, and High and Dry, seeking to hold all of the Marina Defendants jointly and severally liable for past and future environmental cleanup costs. ECF No. 105 (Second Amended Complaint).

In September 2020, the Marina Defendants moved to dismiss the claims against them, ECF No. 119, which, in July 2021, was granted in part and denied in part. ECF No. 121. Plaintiffs' CERCLA claims against BWM, Apache, and High and Dry were dismissed by the Court as barred by the statute of limitations. However, Plaintiffs' CERCLA claims against Grover and Main Street Marine, and the associated state law claims, were allowed to continue.

In August 2021, the Marina Defendants filed a counterclaim against Plaintiffs. ECF No. 123. Through their Counterclaim, the Marina Defendants seek: "(1) to recover or recoup the expenditure of funds [related to remedial work performed on the property] from the Plaintiffs; (2) dismissal of all claims against the Marina Defendants; and (3) any further relief as the Court

2

deems just and proper." ECF No. 123 at 31. On June 10, 2022, Plaintiffs moved to dismiss the Counterclaim pursuant to Fed. Civ. P. 12(b)(1) and 12(b)(6). ECF No.142 at 1.

## **BACKGROUND**[1]

This action involves six lots that occupy a site of two acres (the "Site"). High and Dry operated a marina business on portions of the Site since the early 1970s. *Id.* Defendant Grover is the President and sole owner of High and Dry, President and CEO of Main Street Marine, and controls a number of other businesses which have owned or leased portions of the Site since the early 1970s.[2] ECF 105 at 4–8.

The Counterclaim alleges that around 1988, Defendant Alan Stern ("Stern"), President of Metal Etching Corp. ("Metal Etching"), discussed selling additional lots (the "Main Street Lots")[3] with Grover. ECF No. 123 at 33. These lots had housed P.A. Industries' metal fabricating and decorating business from 1973 to 1982. ECF No. 105 at 3. P.A. Industries subsequently leased the lots from 1982 through 1999 to Metal Etching, which operated a metal fabricating and decorating business. *Id*.

The Marina Defendants allege that because environmental assessments revealed that Defendant Stern and Metal Etching had contaminated the Main Street Lots with hazardous

---

[1] The Court foregoes a more detailed recitation of the history and facts of this case, which have been set forth in the Court's Memorandum & Order dated July 14, 2021.

[2] Grover controls Apache, a legally dissolved entity, which owned tax lots in Freeport since 1983 (Section 62, Block 45, Lots 155 and 157). ECF No. 105 at 5–6. Grover is also the President and 20% owner of BWM (his wife and three children collectively own the other 80%). *Id*. BWM has owned tax lots in Freeport since 2000 (Section 62, Block 45, Lot 54 and Section 62, Block 44, Lots 24/25).

[3] Plaintiffs refer to these lots as the "Main Street Lots," *see* ECF No. 105, and the Marina Defendants refer to them as the "Metal Etching Lots," *see* ECF No. 123. They consist of Section 62, Block 45, Lots 144, 145, and 158.

substances, Grover, acting on behalf of Main Street Marine, declined to purchase the Main Street Lots. ECF No. 123 at 33. At a later date, Stern and Grover began discussions about the possibility of Main Street Marine leasing the Main Street Lots. *Id.* Due to the contamination of the Main Street Lots and the potential liability associated with it, Grover insisted on meeting with the DEC, which had initiated actions against Defendant Stern and Metal Etching,[4] to discuss Main Street Marine's plans for the Main Street Lots and to seek the DEC's approval to lease the property. *Id.*

The Marina Defendants allege that on or about April 25, 2000, Grover met with DEC representatives to discuss the future of the Main Street Lots at the DEC's office in Suffolk County. *Id.* In this meeting, Grover, acting on behalf of Main Street Marine, sought the DEC's permission to lease the Main Street Lots, pay substantial back taxes on the property, and begin remedial work at the Site by cleaning up hazardous substances, demolishing structures, and sealing the area with pavement. *Id.* However, Grover explained that he would not lease the Main Street Lots and undertake this work if the DEC might later attempt to hold him liable for any costs stemming from the contamination of the Main Street Lots. *Id.* The Marina Defendants allege that, upon hearing this proposal, all three DEC representatives stated that this was a "perfect solution" for the property. *Id.* Further, the DEC representatives allegedly represented that Plaintiffs, not Grover, would be responsible for completing any future remediation required through the State Superfund, and the DEC would not seek to recover any related costs from

---

[4] The DEC had already "enforced hazardous waste management regulations at the Site, including an enforcement action that was resolved in April 1999." ECF No. 105 ¶ 39. At the time of the 1999 enforcement action the Site was owned by Freeport Creek LLC, of which Stern was a member. *Id.* ¶¶ 14, 40.

4

Grover or his marina business if Main Street Marine leased the Main Street Lots. *Id*. at 35. The Marina Defendants claim that, based on the assurances that the DEC representatives made, Main Street Marine entered into a lease for the Main Street Lots on July 21, 2000. *Id*.

## DISCUSSION

### I.  Rule 12(b)(1) Motion to Dismiss for Lack of Jurisdiction

Plaintiffs argue that the Court should dismiss Defendants' Counterclaim for lack of subject matter jurisdiction. ECF No. 142 at 10.

"'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Johnson v. Corp. Express, Inc.*, No. 20-CV-4627, 2022 WL 992633, at *1 (E.D.N.Y. Mar. 31, 2022) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party asserting subject matter jurisdiction 'has the burden of establishing beyond a preponderance of evidence that it exists.'" *Id*. When deciding a 12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences . . . favorable to [the moving party]." *Ross v. City Univ. of N.Y.*, 211 F. Supp. 3d 518, 521 (E.D.N.Y. 2016) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). In addition, when "resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

The Eleventh Amendment grants a State immunity from suit in federal court by its citizens, "and acts as a limitation on the federal judiciary's Article III powers." *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015); *see also Alden v. Maine*, 527 U.S. 706, 716–21

5

(1999). "[A] state is thus immune from suits in federal court brought by its own citizens and such immunity extends to officers acting on behalf of the state." *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 243 (E.D.N.Y. 2015). "States also enjoy a broader sovereign immunity, which applies against all private suits, whether in state or federal court." *Beaulieu*, 807 F.3d at 483.

However, a State may waive its immunity through a voluntary appearance in federal court. *See Unkechaug Indian Nation v. N.Y. State Dep't of Env't Conservation*, No. 18-CV-1132, 2019 WL 1872952, at *3 (E.D.N.Y. Apr. 23, 2019) (*citing Lapides v. Bd. of Regents*, 535 U.S. 613, 618–19 (2002)). When a state waives its immunity by voluntarily bringing a suit in federal courts, that waiver extends to any compulsory counterclaims that arise. *See In re Charter Oak Assocs.*, 361 F.3d 760, 768 (2d Cir. 2004) (holding that "when a state files a proof of claim, it waives its immunity as to at least some counterclaims, specifically compulsory counterclaims").

Here, Plaintiffs voluntarily brought their CERCLA claims to a federal court for adjudication, thus waiving their Eleventh Amendment and sovereign immunity with regard to compulsory counterclaims.[5] ECF No. 105 at 2. The question, then, is whether the Marina Defendants' Counterclaim "arises out of the same transaction or occurrence" as the subject matter of the suit and thus would be considered compulsory. Fed. R. Civ. P. 13(a). "A compulsory counterclaim 'does not require an absolute identity of factual backgrounds, [but] the

---

[5] Plaintiffs claim that, under New York State law, it "has statutorily waived its immunity as to tort claims only when asserted in the New York Court of Claims." ECF No. 142 at 17. However, "whether a particular set of state laws, rules, or activities amounts to a waiver of the state's . . . immunity is a question of federal law," not state law. *Lapides*, 535 U.S. at 623. Federal law holds that a state waives its Eleventh Amendment and sovereign immunity when it voluntarily sues in federal court, as is the case here. *See In re Charter Oak Assocs.*, 361 F.3d at 768.

6

essential facts of the claims must be so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *FUJIFILM N. Am. Corp. v. Geleshmall Enters. LLC*, 239 F. Supp. 3d 640, 645 (E.D.N.Y. 2017) (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004)).

Here, accepting as true all the factual allegations in the Counterclaim and not drawing any inferences favorable to Plaintiffs, the Court is satisfied that the Counterclaim is compulsory. Two of the key issues in both Plaintiffs' claim and the Marina Defendants' Counterclaim are whether the Marina Defendants are the lessee of the Main Street Lots and how the Marina Defendants became the lessee of the Main Street Lots. Plaintiffs assert that the Marina Defendants are liable under CERCLA because leasing the Main Street Lots made them an operator of a facility where hazardous material had been stored. ECF No. 105 at 21–24. The Marina Defendants allege in their Answer and Counterclaim that the only reason they are liable under CERCLA is because Plaintiffs fraudulently induced Grover into leasing the Main Street Lots after assuring him that he would not face liability under CERCLA for being an operator of the Main Street Lots. ECF No. 123 at 31.

Plaintiffs argue that because the "resolution of the factual issues underlying the State's CERCLA, and common law claims will not resolve the Marina Defendants' Counterclaim . . . the Counterclaim bears no logical relationship to the State's claims." ECF No. 142 at 14. The Court disagrees. The logical relationship standard does not require that the resolution of factual issues associated with the Plaintiffs claims enable the resolution of the Counterclaim-related factual issues in order for the Counterclaim to be considered compulsory. A counterclaim is compulsory if the essential facts of the claims are "so logically connected that considerations of

7

judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Jones*, 358 F.3d at 209. That is certainly the case here.

Therefore, Plaintiffs 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is denied because the Marina Defendants' Counterclaim is compulsory, and Plaintiffs voluntarily waived their immunity to compulsory counterclaims when they brought suit in federal court.

## II.     Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

Plaintiffs additionally argue that the Court should dismiss the Marina Defendants' Counterclaim for failure to state a claim of fraudulent inducement. ECF No. 142 at 15.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *see also Benny v. City of Long Beach*, No. 20-CV-1908, 2021 WL 4340789, at *7 (E.D.N.Y. Sept. 23, 2021).

"Under New York law, a [party] must allege four elements to state a claim for fraudulent inducement: (1) a material misrepresentation of a presently existing or past fact; (2) an intent to

deceive; (3) reasonable reliance on the misrepresentation by the plaintiff; and (4) resulting damages." *Rockaway Beverage, Inc. v. Wells Fargo & Co.*, 378 F. Supp. 3d 150, 166 (E.D.N.Y. 2019) (citing *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012)). Additionally, the party alleging fraud must "'specify the time, place, speaker, and content of the alleged misrepresentations, . . . how the misrepresentations were fraudulent[,]' and 'those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth,'" as required by Rule 9(b)'s heightened pleading standards. *Rockaway Beverage*, 378 F. Supp. 3d at 166 (quoting *Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012)). A party can adequately plead intent by "(1) alleging facts to show that defendant[ ] had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 401 (E.D.N.Y. 2018) (*quoting S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996)). "To show motive and opportunity, a plaintiff must allege that the defendant 'benefitted in some concrete and personal way from the purported fraud.'" *Goonewardena v. Forster & Garbus LLP*, No. 18-CV-00029, 2019 WL 121677, at *7 (E.D.N.Y. Jan. 7, 2019) (quoting *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (citation omitted)).

      Here, the Marina Defendants sufficiently allege each element of a claim for fraudulent inducement. The first element is satisfied by the Marina Defendants' allegations that representatives of the DEC misrepresented that Defendant Glover would not be held liable for

9

any costs stemming from the contamination at the Main Street Lots.[6]  *See* ECF No. 123 at 37. The second element is satisfied by the Marina Defendants' allegations that the DEC representatives knew that the statements they made were false, but nevertheless made those statements to induce Grover into leasing the contaminated property and open himself up to liability. *Id*. ¶ 32.  The third element is satisfied by the Marina Defendants' allegation that they reasonably relied on the DEC's representations when they chose to lease the property. *Id*. ¶ 34. Finally, the Marina Defendants allege the fourth element by stating that they lost $350,000 leasing a property they would not have otherwise leased and opened themselves up to legal liability. *Id.*

In addition, the Marina Defendants have provided the sufficient particularity needed to plead fraud:  they specify the time (April 25, 2000), the place (the DEC's office in Suffolk County), the speakers (the three DEC representatives named in the Counterclaim), and what

---

[6]  Plaintiffs argue for the first time in their reply brief that the Marina Defendants have "alleged only a promise by DEC not to sue in the future, and not a . . . present fact." ECF No. 142-3 at 8.  It is well-established that "[a]rguments may not be made for the first time in a reply brief." *Alford v. City of New York*, 413 F. Supp. 3d 99, 108 (E.D.N.Y. 2018) (quoting *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)).  "New arguments first raised in reply papers in support of a motion will not be considered." *Id.* at 108 (citations and quotation marks omitted). Here, Plaintiffs failed to argue in their initial brief that the Marina Defendants fraudulent inducement claim was based on a future promise and not a present fact, even though that argument was undoubtably available to them.  Having not raised the argument in a timely manner, it is not properly before the Court, and will not be addressed.  However, if the Court did choose to address Plaintiffs' newly raised argument on the merits, it would not find their argument persuasive.  It is settled law that "if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of material existing fact upon which an action" based on fraudulent inducement may be predicated. *Power Up Lending Grp., Ltd. v. Murphy*, No. 16-CV-1454, 2017 WL 1497974, at *4 (E.D.N.Y. Apr. 26, 2017) (citing *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992)).  Here, the Counterclaim sufficiently alleges that the DEC's statements at the April 2000 meeting were made with an intent to deceive.  ECF No. 123 ¶ 32.

specifically was misrepresented ("that the State, not Mr. Grover, would be responsible for completing any future remediation required"). *Id*. ¶¶ 34–35. Finally, the Marina Defendants allege motive and opportunity on the part of the DEC sufficient to give rise to a strong inference that Plaintiffs had an intent to defraud. The Site was "a low priority for the State, [and] it would take years for the State to expend funds to remediate the Metal Etching Lots." *Id*. By inducing Grover to lease the property on behalf of Main Street Marine, Plaintiffs could ensure that "remedial work [would begin] at no cost to the State . . . until the State was able to complete any additional remedial work," thus saving the DEC and Plaintiffs time and money. *Id*. In addition, the Marina Defendants allege that the DEC made that claim, with the full understanding it was false at the time it was made, in order to expand the "pool of potentially responsible parties from which Plaintiffs could seek to recover response costs." *Id.* at 37. The Marina Defendants have thus successfully pleaded facts to establish the elements of a fraudulent inducement claim.

Plaintiffs further advance several arguments why the Marina Defendants have failed to state a claim. Plaintiffs first assert that the Marina Defendants have failed to state a claim because their Counterclaim "claims only a breach of an oral contract and thus fails as a claim for fraudulent inducement." ECF No. 141-1 at 15–16. However, nowhere in the Counterclaim do the Marina Defendants assert a breach of contract claim. *See* ECF No. 123 at 37; *see also* ECF No. 142-2 (Memorandum in Opposition) ("[No] contract, written or oral, between the Plaintiffs and Marina Defendants [is] alleged in the counterclaim."). The Marina Defendants' fraudulent inducement claim lies in tort, not contract. *See Zeising v. Kelly*, 152 F. Supp. 2d 335, 346 (S.D.N.Y. 2001) (*citing Channel Master Corp. v. Aluminium Ltd. Sales, Inc*., 151 N.E.2d 833, 836 (1958)).

11

Plaintiffs further assert that the Marina Defendants have failed to state a claim because it is "barred by the statute of frauds." ECF No. 141-1 at 17. However, again, a fraudulent inducement claim is a tort, and thus is not subject to the statute of frauds in New York. *See Zeising*, 152 F. Supp. 2d at 346 (noting the Statue of Frauds does not apply to fraudulent inducement claims under New York law).

Plaintiffs additionally assert that the Marina Defendants fail to state a claim because they do not plead that the DEC technical staff had authority to bind Plaintiffs. ECF No. 141-1 at 19. Actual authority is not an element of a claim for fraudulent inducement. All that is required is that the Marina Defendants had reasonably relied on the misrepresentation. *See Rockaway Beverage*, 378 F. Supp. 3d at 166. Here, the Marina Defendants have plausibly alleged facts which establish that their reliance on the DEC's statements was reasonable in context: Grover met with the DEC project managers for the Site at their offices, spoke to them about issues central to their job, and relied on the representations made by them as DEC officials. ECF No. 123 at 34. A further determination of whether this reliance was reasonable would be more appropriate at the summary judgement stage. *See Rockaway Beverage*, 378 F. Supp. 3d at 167 (finding that questions as to the scope of a representative's authority are not appropriate to be decided on a motion to dismiss).

In addition, Plaintiffs assert that the Marina Defendants fail to state a claim because they fail to allege that any Marina Defendant suffered an "out-of-pocket loss." ECF No. 141-1 at 21. This is because "[i]n a fraud action, a plaintiff may recover only the actual pecuniary loss sustained as a direct result of the wrong." *Passiglia v. Northwell Health, Inc.*, 252 F. Supp. 3d 129, 139 (E.D.N.Y. 2017) (citing *Continental Cas. Co. v. PricewaterhouseCoopers, LLP*, 15

12

N.Y.3d 264, 271, 907 N.Y.S.2d 139, 933 N.E.2d 738 (2010)). The Court disagrees. The Marina Defendants allege damages: the $350,000 they spent leasing a property they would not have leased otherwise, and the costs associated with future legal liability associated with the property. ECF No. 123 at 34. These damages are more determinate and immediate than "mental or emotional injuries, or damages that are remote, speculative or undeterminable, or not independent of other causes," which are not recoverable in fraud cases. *Passiglia*, 252 F. Supp. 3d at 140. Thus, the Court concludes that the Marina Defendants have pled that their pecuniary loss is the difference between the situation they were in before they leased the property and after their out-of-pocket costs to lease the property, along with the accompanying costs related to the disposal of hazardous waste, and any subsequent liability to Plaintiffs. *See Rather v. CBS Corp.*, 68 A.D.3d 49, 58, 886 N.Y.S.2d 121, 127 (2009) ("[Plaintiff] was required to plead that he had something of value, was defrauded . . . into relinquishing it for something of lesser value, and that the difference between the two constituted [their] pecuniary loss." ) (citing *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 421 (1996)).

Finally, Plaintiffs argue that the Counterclaim fails because it "fails to plead that any other of the Marina Defendants, besides Main Street Marine, materially relied on DEC's alleged misrepresentations." ECF No. 141 at 23. However, Plaintiffs themselves acknowledge that Defendant Grover—who participated in a meeting with the DEC where the alleged fraud occurred—either controls or owns the other Marina Defendants. ECF No. 53 at 4. Thus, when Grover relied upon the DEC's alleged misrepresentations, the organizations he owned and controlled, including but not limited to Main Street Marine, also effectively relied upon the alleged misrepresentations.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to dismiss the Marina Defendants' Counterclaim for lack of subject matter jurisdiction and for a failure to state a claim is denied.

SO ORDERED.

                                                */s/ Hector Gonzalez*
                                                HECTOR GONZALEZ
                                                United States District Judge

Dated:  Brooklyn, New York
           September 13, 2022